IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Texas Semi Truck Sales, LLC,** | § | **Case No. 17-36582** |
| | § | **Chapter 11** |
| **Debtor** | § | |

### Debtor's Second Amended Disclosure Statement and Plan of Reorganization

Texas Semi Truck Sales, LLC ("Texas Semi" or the "Debtor") proposes this Second Amended Disclosure Statement and Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §§ 1121 and 1125.

## I.    Information Regarding the Debtor

### A.  The Debtor

Texas Semi is a Texas limited liability company with its principal place of business at 11118 Maynard Place, Houston, Texas 77064 and its principal assets located at 135 Conrads Road, New Braunfels, Texas 78130. Texas Semi also does business under the name Johnny Macs Truck and RV Wash. Where appropriate, references to the Debtor shall mean the reorganized debtor.

### B.  Brief History of the Debtor and Cause of the Debtor's Chapter 11 Filing

Texas Semi was formed in July 2015. It owns and operates a truck wash in New Braunfels focusing on 18-wheeler trucks. The truck wash is located directly across the street from a Trucks of America Travel Plaza that is one of the largest truck stops in the United States and serves approximately eight hundred trucks per day.

Soon after it opened, Texas Semi obtained a loan from Bank of Lake Mills ("Lake Mills"). It now believes that the loan may have been usurious and that the bank may have committed additional unlawful acts related to the loan. The Federal Deposit Insurance Corporation has fined Lake Mills to settle a number of accusations against the bank of unfair and deceptive practices from 2013 to 2015, which is near the time when Texas Semi obtained its loan.

In December 2016, Texas Semi decided to pay off the loan from Lake Mills with a loan from Stallion Funding, LLC ("Stallion"). The Stallion loan is secured by a blanket lien on Texas Semi's assets, including the physical location of the truck wash in New Braunfels. Texas Semi was to begin making payments on the Stallion loan in February 2017. It made the payments on the Stallion loan until August 2017, when it began to have financial difficulties due to Hurricane Harvey. Texas Semi did not make its August, November, and December 2017 payments on the Stallion loan. Stallion threatened to foreclose on the truck wash property. On December 4, 2017, Texas Semi filed this bankruptcy case to prevent the foreclosure and reorganize its business.

### C.  Assets of the Debtor

Texas Semi's principal asset is its real property located at 135 Conrads Road, New Braunfels, Texas 78130 (the "Truck Wash"), which is the physical location of the truck wash. The Truck Wash has an estimated value of $2.2 million. In addition, Texas Semi has approximately $51,100 in machinery, equipment, and fixtures related to its business and $25,000 in accounts receivable. Texas Semi has other miscellaneous assets with an estimated combined value of $12,900. For detailed information regarding Texas Semi's assets, please see its bankruptcy schedules and monthly reports filed with the Court.

Texas Semi may also have legal claims against Lake Mills for usury and other claims related to its former loan. Texas Semi has not yet initiated any litigation against Lake Mills and cannot estimate the value of its potential claims at this time.

Also not mentioned as an asset on Texas Semi's bankruptcy schedules is a lease that it has with Taco Rico. Texas Semi leases a portion of the Truck Wash to Taco Rico, which operates a restaurant at the location. Taco Rico pays $800 per month to Texas Semi under the terms of the lease.

### D.  Source of the Information Contained in This Disclosure Statement

Unless otherwise indicated, Texas Semi has submitted all of the information contained in this Plan and Disclosure Statement.

### E.  Present Condition and Post-Petition Operations of the Debtors

Since filing the bankruptcy case, Texas Semi has continued to operate the Truck Wash in New Braunfels, though not yet at full capacity. Texas Semi's post-petition financial operations are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit A are its two most recent monthly operating reports, setting forth its cumulative post-petition operations.

### F.  Anticipated Future of the Debtor, Management of the Reorganized Debtor, and Feasibility

Robert Heggy ("Heggy") owns one hundred percent (100%) of Texas Semi and is its president and general manager. Heggy will continue as president and general manager as long as he remains the owner, but he is open to the possibility of selling his ownership of the Debtor. If

he sells his ownership of the Debtor, the buyer will determine the future management of Texas Semi.

Texas Semi believes that its current operations will generate more than sufficient income to fund the proposed bankruptcy plan. Its actual income and expenses, together with the projections of income and expenses for the next year are attached as Exhibit B to this Plan and Disclosure Statement.

*Sale of Property.*  Texas Semi intends to pursue a sale of the property.  The listing price will be an agreed amount with Stallion, or if an agreement cannot be reached, based on an appraised value. Texas Semi has agreed with Stallion for a one year time period to sell the Property.  Texas Semi may also pursue the re-financing of the Property at the same time.

## G. Claims Summary

Texas Semi's bankruptcy schedules reflect claims against it and their respective priorities. The bar date for filing claims is April 9, 2018 and has passed. The following table summarizes the claims filed against Texas Semi:

| Claim # | Creditor | Amount | Status | Collateral |
|---------|----------|--------|--------|------------|
| 1 | Harris County et al | $759.23 | Secured | Business personal property in Harris County |
| 2 | Cypress-Fairbanks ISD | $826.79 | Secured | Business personal property in Harris County |
| 3 | Comal County et al (2016 and 2017) | $24,681.44 | Secured | Real and business personal property in Comal County |
| 4 | Comal County et al (2018) | $25,540.09 | Secured | Real and business personal property in Comal County |
| 5 | Sprint Corporation | $2,196.59 | General Unsecured | - |

| 6 | New Braunfels Utilities | $2,905.63 | General Unsecured | Utilities |
| 7 | Colonial Funding Network, Inc. | $22,961.12 | Secured | Accounts, Inventory, etc. |

If Texas Semi has classified a claim on its bankruptcy schedules as disputed, unliquidated, or contingent, then the creditor must file a proof of claim. If Texas Semi classified a claim on Schedule F as disputed, unliquidated, or contingent and if the creditor has filed no proof of claim by the applicable bar date, then Texas Semi will not pay any amount on the claim.

Timely proofs of claim have already been filed for all of the secured and priority claims that Texas Semi classified as undisputed in its bankruptcy schedules. Texas Semi has no other undisputed secured or priority claims. Texas Semi has scheduled undisputed general unsecured claims. These claims may be viewed on Schedule E/F. Copies of Schedules D (secured creditors) and E/F (priority and general unsecured creditors) are available from the Clerk of the Court or from Texas Semi's counsel.

At this time, Texas Semi disputes the claim number 7 filed by Colonial Funding Network.

### H.  Liquidation as an Alternative to the Proposed Plan

Texas Semi is proposing a Chapter 11 Plan of Reorganization to repay its debts, but if the Plan is not approved by the creditors and confirmed by the Court, Texas Semi's primary alternative is liquidation under chapter 7 or dismissal of the case. In a chapter 7 liquidation, it is possible that Texas Semi's secured and priority creditors would be paid in full.

The total amount of filed or undisputed secured and priority claims against Texas Semi is approximately $650,000 or less. Texas Semi has a loan from Stallion secured by a blanket lien

on all of Texas Semi's assets. Though the amount of the loan is disputed, Stallion has filed a claim that sets forth an amount owed as of the filing date of $608,105.59. Including Stallion's claim, the total amount of secured and priority claims against Texas Semi is approximately $650,000 or less.

Texas Semi estimates that the total value of its combined assets is $2,289,000. However, the value is only an estimate and is uncertain. The assets may not ultimately bring the expected amount in a chapter 7 liquidation. Therefore, although secured and priority creditors may be paid in full in a chapter 7 liquidation, uncertainty remains.

The Plan proposes that all creditors—secured, priority, and unsecured—be paid in full to the extent of their filed and allowed claims. Texas Semi believes that it will have sufficient future income and sales proceeds to pay the creditors in accordance with the terms of the proposed Plan.

See Exhibit C for a liquidation analysis.

## I. Estimated Administrative Expenses

Texas Semi estimates that administrative expenses for this case will be approximately $30,000. Administrative expenses will include attorney fees, other professional fees, pre-confirmation U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses.

## J. Avoidance and Contested Claims

At this time, Texas Semi has not identified any preferential transfers or claims that should be disputed other than the Stallion loan, which was classified as disputed on the bankruptcy

schedules.

### K.  Summary of Litigation.

Texas Semi has not been involved in any recent litigation and is not currently involved in any pending litigation. However, Texas Semi may pursue legal action against Lake Mills in the future for usury and other claims related to its former loan from that bank.

### L.  Risks Posed to Creditors

Texas Semi does not foresee any particular risks to creditors under the proposed Plan, but the Plan will be funded almost entirely from Texas Semi's future income and the proposed sale of its business or property. Texas Semi's future income will necessarily be affected by the general circumstances and economic forces that affect all businesses and businesses in Texas Semi's industry. Texas Semi's future business would be particularly harmed if the truck stop across the street from the Truck Wash closed, but Texas Semi has no reason to believe that this is likely.

Texas Semi adequately maintained its debt before August 2017 and experienced its financial difficulties only as a result of Hurricane Harvey. Though another weather disaster could similarly derail the Plan, Texas Semi does not believe that disasters of that magnitude will frequently recur. Texas Semi believes that it will be able to maintain payments under the Plan just as it maintained its debt prior to Hurricane Harvey.

### M. Tax Ramifications

An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated

thereunder, judicial authority, and current administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult its accountant or tax lawyer to determine the effect of this Plan upon its claim.

### N.  Affiliate Relationships

Texas Semi is wholly owned by Robert Heggy. Texas Semi has no affiliate relationships.

### O.  Absolute Priority Rule

The Bankruptcy Code provides that, with respect to each class of creditors, such class must accept the plan or such class is not impaired under the plan. If a class does not accept the plan, then the bankruptcy court may confirm a plan over the failure of a class to vote for the plan, provided that for a class of unsecured claims, the plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Texas Semi believes that the Plan complies with the absolute priority rule in the Bankruptcy Code that is contained in Section 1129(b). Texas Semi is proposing to pay the total amount of each allowed claim in full.

### P.  Definitions

B&A refers to Baker & Associates.

The <u>Bankruptcy Code</u> refers to Title 11 of the United States Code.

The <u>Court</u> means the United States Bankruptcy Court of the Southern District of Texas.

The <u>Debtor</u> refers to Texas Semi Truck Sales, LLC.

<u>Default Notice</u> refers to the written notice of a default under the Plan as described in paragraph e in Section II of the Plan under "Additional Provisions Applicable to Classes 2-5."

The <u>Effective Date</u> means the date that is fifteen (15) days after a final and non-appealed order is entered confirming Texas Semi's chapter 11 plan of reorganization.

<u>Lake Mills</u> refers to Bank of Lake Mills.

<u>Stallion</u> refers to Stallion Funding, LLC.

<u>Texas Semi</u> refers to Texas Semi Truck Sales, LLC.

The <u>Truck Wash</u> refers to the real property located at 135 Conrads Road, New Braunfels, Texas 78130.

## II.   Plan of Reorganization and Treatment of Claims

### A.  Plan Concept

Texas Semi's Plan is reorganizing in nature. It provides for the division of claims into seven classes.

### B.  Treatment of Claims

Each of the claims in each class will be treated in the manners and methods described below:

<u>Class 1. Administrative Claims as of the Effective Date</u>

Class 1 consists of the allowed claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code. Class 1 includes fees for services rendered and expenses incurred through the Effective Date by Texas Semi's counsel and other professionals appointed for Texas Semi by the

Court. It also includes the U.S. Trustee's pre-confirmation quarterly fees and other administrative expenses.

The estimated amount of claims in Class 1 is $36,000. Except as provided below, each creditor in Class 1 will be paid in cash on the Effective Date if the creditor's claim has matured. In addition, the claim must also have been approved or allowed by the Court, if approval or allowance is necessary.

Baker & Associates ("B&A") is Texas Semi's bankruptcy counsel. If B&A and Texas Semi agree as to the amounts to be paid for the legal fees and expenses, B&A may accept payments over time in lieu of payment at confirmation.

Texas Semi will pay, in the ordinary course of business, all fees for services rendered and expenses incurred after the Effective Date by its court-appointed counsel and other professionals. Texas Semi will not need to file fee applications or seek approval or allowance from the Court to pay these fees and expenses. Texas Semi will be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

On the Effective Date of the Plan, Texas Semi will pay any pre-confirmation quarterly fees owed to the U.S. Trustee. After confirmation and until this case is closed by the Court, Texas Semi will pay quarterly fees to the U.S. Trustee as they accrue. Texas Semi will also serve on the U.S. Trustee a quarterly financial statement or affidavit of quarterly disbursements.

Class 2. Secured Claim of Harris County et al

Class 2 consists of the secured claim of Harris County et al ("Harris County"). Harris County filed a proof of claim in the amount of $759.23 for ad valorem property taxes secured by dealer inventory and other business personal property located at 4407 Clark Road, Houston,

Texas 77040. The amount claimed is for the 2016 and 2017 tax years.

Texas Semi does not believe that the claim is correct. Texas Semi has filed or will file documents with Harris County to correct the claim.[1]  Texas Semi does not believe any amounts are owed.  Texas Semi intends to object to any amounts from Harris County.  If the claim is allowed, Texas Semi will pay the amount owed to Class 2 in the same manner and with the same terms as for Comal County as set forth in Class 4 herein.  All provisions of Comal County in Class 4 shall apply to any allowed amount for Harris County in Class 2.

Payments to Class 2 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 2 is impaired.

Class 3. Secured Claim of Cypress-Fairbanks ISD

Class 3 consists of the secured claim of Cypress-Fairbanks ISD ("Cypress"). Cypress filed a proof of claim in the amount of $826.79 for ad valorem property taxes secured by dealer inventory and other business personal property located at 4407 Clark Road, Houston, Texas 77040. The amount claimed is for the 2016 tax year.

Texas Semi does not believe that the claim is correct. Texas Semi has filed or will file documents with Cypress to correct the claim.[2]  Texas Semi does not believe any amounts are owed.  Texas Semi intends to object to any amounts from Cypress.  If the claim is allowed, Texas Semi will pay the amount owed to Class 3 in the same manner and with the same terms as for Comal County as set forth in Class 4 herein.  All provisions of Comal County in Class 4 shall apply to any allowed amount for Cypress in Class 3.

---

[1] Heggy understands that the documents previously submitted to Harris County will apply and be used for Cypress.
[2] Heggy understands that the documents previously submitted to Harris County will apply and be used for Cypress.

Class 3 is impaired.

Class 4. Secured Claim of Comal County et al (2016-2017 Taxes)

Class 4 consists of the secured claim of Comal County et al ("Comal County"). Comal County filed a proof of claim in the amount of $24,681.44 for ad valorem property taxes secured by the Truck Wash and business personal property located thereon. The amount claimed is for the 2016 and 2017 tax years.

The Debtor will pay the claim of Comal County ("Comal") at 12.0% interest in monthly payments over a period not exceeding five (5) years from the Petition Date, starting on the 15th day of the month for the month following the Effective Date.  Interest shall accrue from the petition date and continue until such time as the claims of the Comal are paid in full.  The Debtor shall pay all post-petition ad valorem tax liabilities (tax year 2018 and subsequent tax years) owing to Comal in the ordinary course of business as such tax debt comes due and prior to said ad valorem taxes becoming delinquent without the need of Comal to file administrative expense claims and/or requests for payment.

Comal will retain its pre- and post-petition statutory liens securing their claims until such time as the claims are paid in full, including post-petition interest. If the reorganized Debtor fails to timely make its required plan payments to Comal or if the reorganized Debtor becomes delinquent with respect to any post-petition ad valorem property taxes owed to Comal, the reorganized Debtor will be considered to have defaulted under the Plan as to Comal. If the reorganized Debtor defaults under the Plan as to Comal, Comal may send a notice of the default (a "Default Notice") to the reorganized Debtor. If the reorganized Debtor does not cure the default within 20 days after receiving the Default Notice, Comal may proceed to collect all

amounts owed pursuant to state law without further recourse to the Bankruptcy Court. Once Comal has sent three Default Notices to the reorganized Debtor on account of three occasions of default, Comal will no longer need to send additional Default Notices to the reorganized Debtor. If the reorganized Debtor defaults again as to Comal, Comal may proceed to collect all amounts owed under state law without recourse to the Bankruptcy Court and without further notice.

Payments to Class 4 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 4 is impaired.

Class 5. Secured Claim of Comal County et al (2018 Taxes)

Class 5 consists of the secured claim of Comal County et al ("Comal County"). Comal County filed a proof of claim in the amount of $25,540.09 for ad valorem property taxes secured by the Truck Wash and business personal property located thereon. The amount claimed is an estimate of taxes for the 2018 tax year.

Texas Semi will pay the amount owed to Class 5 on or before the due date of January 31, 2019.

Class 5 is not impaired.

Additional Provisions Applicable to Classes 2-5

The following additional provisions apply to Classes 2-5:

a. *Transfer of Collateral.* If Texas Semi transfers any property securing a claim in Classes 2-5, Texas Semi will remit the proceeds it receives from the transfer to the creditor whose claim the property secured. The amount of the transfer proceeds that Texas Semi will remit to the creditor will not exceed the remaining amount of the claim formerly secured by the

property. The closing agent for the transfer will disburse the appropriate amount of transfer proceeds to the creditor at the time of closing. The closing agent will not disburse any amounts to any other person or entity until it has disbursed the appropriate amount of transfer proceeds to the creditor. The creditor will apply all of the transfer proceeds it receives to the claim formerly secured by the transferred property.

b.  *Pre-Payment.* Texas Semi may pre-pay the claims in Classes 2-5 at any time.

c.  *Claim Objections*. Texas Semi has 60 days from the Effective Date to object to any claim in Classes 2-5. If Texas Semi does not object to a particular claim in Classes 2-5 during this time period, then that claim will be deemed an allowed secured claim in the amount stated on its proof of claim.

d.  *Plan Default*. If Texas Semi fails to make any payment to Classes 2-5 required by this Plan, the failure will constitute a Plan default. In addition, if Texas Semi fails to timely pay any post-confirmation taxes that accrue to any creditor in Classes 2-5 before the Plan has been completed, that failure will also constitute a Plan default.

e.  *Default Procedure.* If a creditor in Classes 2-5 fails to receive a payment as a result of a Plan default, the creditor may send a written notice of the default (a "Default Notice") by certified mail to Texas Semi and Texas Semi's attorney. Texas Semi will have 10 days after receipt of the Default Notice to cure the default. If Texas Semi does not cure the default within this time period, the creditor may use any rights and remedies available to it under state law to collect the full amount of all taxes, penalties, and interest owed. The creditor may do so without obtaining any further order from the Court or providing any additional notice to Texas Semi.

f.  *Three Default Limit.* No creditor in Classes 2-5 will have to follow the default

---

procedure in the preceding paragraph more than three times. If the creditor has already followed the default procedure on three prior occasions and again fails to receive a payment as a result of a Plan default, the creditor does not need to follow the default procedure. Instead, the creditor may immediately use any rights and remedies available to it under state law to collect the full amount of all taxes, penalties, and interest owed. The creditor may do so without obtaining any further order from the Court or providing any notice to Texas Semi.

Class 6. Secured Claim of Stallion Funding, LLC

Class 6 consists of the secured claim of Stallion Funding, LLC ("Stallion"). Stallion has filed a proof of claim for the amount of $608,105.59. Stallion's claim is secured by a lien and security interest on the real property and other assets of Texas Semi's assets, including the Truck Wash.

The amounts owed to Class 6 will accrue interest at a rate of fourteen percent (14%) per annum from the Petition Date until the debt to Stallion is paid in full.

Notwithstanding the accrual of interest at fourteen percent (14%) per annum, Texas Semi will pay to Stallion the amount of $4,852 per month in interest to be applied on the allowed amount of the claim starting on the fifth (5th) day of the month that is at least fifteen (15) days after the Effective Date.[3]

The amounts owed to Stallion will be due and payable in full twelve (12) months after the Effective Date.  The Debtor intends to obtain the funds to pay Stallion from either a sale of the Property or business or the re-financing of the Stallion debt.  The payment to Stallion will include the accrued and unpaid interest differential between the rate of 14% per annum and the

---

[3] If the Effective Date is less than fifteen days from the fifth day of the next month, then the payments will start in the following calendar month.

pay rate as set forth herein (approximately 9.5% per annum). If the amounts due and owing to Stallion, including all accrued but unpaid interest, are not paid in full within such time period, Stallion may take such actions as allowed under state law to enforce collection of such amounts.

Texas Semi shall maintain insurance on the collateral, listing Stallion as a loss-payee. Stallion shall retain its liens and security interests as to the real property and other collateral until its claim is paid in full in accordance with this plan.

The funds received by the Debtor for the food operation lease during the chapter 11 case will be delivered to Stallion and applied by Stallion to interest amounts due to Stallion during the chapter 11 case. After the confirmation of this plan, the funds received by the Debtor for the food operation may be used by the Debtor in its normal course of business so long as the Debtor is current and making its payments to Stallion.

Stallion may set up and require the Reorganized Debtor to pay a monthly escrow amount such that Stallion will have a sufficient escrow by January 25, 2019, to pay the 2018 ad valorem taxes.  The escrow payments, if required by Stallion, shall be due on the twentieth (20th) day of each month after the Effective Date.  Stallion will use such funds to pay the 2018 ad valorem taxes, to the extent that funds are in the escrow account.

Stallion shall have the right to request fees and expenses pursuant to section 506 of the Bankruptcy Code.

*Financial Information:*  The Reorganized Debtor will provide a monthly cash flow statement to Stallion and a copy of the tax return for 2017 and 2018 upon the filing of such returns.  The Debtor will provide such other financial information as may be reasonably requested by Stallion.

The terms of the loan documents between Stallion and the Debtor shall remain in full force and effect except as changed herein.

*Default Procedure.* If Stallion fails to receive a payment as a result of a Plan default, Stallion may send a written notice of the default (a "Default Notice") by certified mail to Texas Semi and Texas Semi's attorney. Texas Semi will have 10 days after receipt of the Default Notice to cure the default. If Texas Semi does not cure the default within this time period, Stallion may then exercise its rights and remedies available to it under state law to collect the amounts owed to Stallion. Stallion may do so without obtaining any further order from the Court or providing any additional notice to Texas Semi.

The Debtors shall be entitled to no more than two (2) Notices of Default within any twelve (12) month period of time.  In the event of a third (3rd) default within a 12 month period of time, Stallion may exercise its state law contractual rights as set forth in its contract with Debtor.

Class 6 is impaired.

Class 7. General Unsecured Claims

Class 7 consists of all unpaid, pre-petition, allowed, unsecured, non-priority claims against Texas Semi. Based on Texas Semi's bankruptcy schedules and the proofs of claim currently filed with the Bankruptcy Court, Texas Semi estimates that the total amount of claims in this class—including the unsecured and non-priority portions of the claims of secured and priority creditors—is approximately $5,200 or less.

Texas Semi will pay 100% of the amount owed to Class 7 in approximately 18 equal monthly payments of $300 per month. Payments to Class 7 will start on the fifth day of the 2nd

full calendar month following the Effective Date of the Plan.  If the Property or business is sold, the Debtor will fully pay all claims in Class 7 within 15 months of the Effective Date.

Class 7 is impaired.

<u>Class 8.  Claim of Colonial Funding, Inc.</u>

Class 8 consists of the secured claim of Colonial Funding, Inc. ("Colonial"). Colonial has filed a proof of claim for the amount of $22,961.12. Colonial's claim is allegedly secured by accounts, inventory and similar assets.

Texas Semi believes that it had fully paid Colonial prior to the filing of the chapter 11 case.  Texas Semi will object to the claim of Colonial.

To the extent that any or all of the claim of Colonial is allowed, Texas Semi will pay the claim of Colonial over a 72 month period with interest at six percent (6%) per annum.  Payments will start on the fifth (5th) day of the month that is at least fifteen (15) days after the Effective Date.[4] The amount owed to Class 8 will include post-petition interest accrued at a rate of six percent (6%) per annum from the Petition Date until the debt to Colonial is paid in full.

**Disputed Claims and Objections to Claims**

Texas Semi may file an objection to any disputed claim within sixty (60) days from the Effective Date of the Plan. Objections not filed within the foregoing time period will be deemed waived, except to the extent that the grounds for the objection could not have been discovered prior to the expiration of the sixty (60) day time period. If an objection is filed to any claim, payments on the claim will not begin until after an order of the Court allowing the claim has become final.

---

[4] If the Effective Date is less than fifteen days from the fifth day of the next month, then the payments will start in the following calendar month.

### C. Executory Contracts

Upon confirmation of this Plan, Texas Semi will be deemed to have assumed the following executory contracts:

    a. Internet service contract with AT&T, P.O. Box 6903, The Lakes, Nevada 88901.

    b. Advertising contract with Google.

    c. Utilities contract with New Braunfels Utilities, P.O. Box 310289, New Braunfels, Texas 78131.

    d. Lease of restaurant space to Taco Rico, 135 Conrads Lane B, New Braunfels, Texas 78130.

Texas Semi will be deemed to have rejected all other executory contracts and leases as of the Effective Date.

### D. Feasibility to Perform and Implementation of the Plan

Texas Semi believes that the proposed Plan is feasible. Texas Semi adequately maintained its debt before August 2017 and its financial problems were largely the result of Hurricane Harvey, rather than on-going problems with the business itself. The Truck Wash is advantageously located across from a busy truck stop that is likely to provide Texas Semi with a sufficient volume of business to meet the Plan requirements. The projections attached as Exhibit B demonstrate the feasibility of the Plan.

### E. Acceptance or Rejection of the Plan

Each impaired class of claims will be entitled to vote separately to accept or reject this Plan unless that class receives no distribution under the Plan. Any class receiving no distribution is deemed to have rejected the Plan. Any unimpaired class of claims will not be entitled to vote

either to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read this Plan and Disclosure Statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of allowed claims voting and fifty-one percent (51%) in number of allowed claims voting in each class of claims must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 950 Echo Lane, Ste. 200, Houston, Texas 77024.

IF ANY CLASS REJECTS THE PLAN, THE DEBTOR MAY SEEK TO "CRAMDOWN" THE CONFIRMATION OF THE PLAN PURSUANT TO 11 U.S.C. § 1129(b). THE BANKRUPTCY CODE ALLOWS THE DEBTOR TO REQUEST THE COURT TO CONFIRM THE PLAN NOTWITHSTANDING THE REJECTION OF ANY CLASS(ES) OF CREDITORS IF THE DEBTOR CAN DEMONSTRATE THAT (i) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND (ii) THE PLAN IS FAIR AND EQUITABLE WITH RESPECT TO EACH CLASS OF CLAIMS OR INTERESTS THAT IS IMPAIRED AND HAS NOT ACCEPTED THE PLAN. IN ORDER TO "CRAMDOWN" THE PLAN, THE DEBTOR WILL HAVE TO DEMONSTRATE TO THE BANKRUPTCY COURT AT A HEARING THAT THESE TWO STANDARDS HAVE BEEN SATISFIED. THIS HEARING WOULD BE PART OF THE CONFIRMATION HEARING ON THE PLAN. ALL CREDITORS MAY BE PART OF THE CONFIRMATION HEARING AND WILL HAVE AN OPPORTUNITY TO PARTICIPATE IN IT.

### F.  Jurisdiction of the Bankruptcy Court

The Bankruptcy Court will retain exclusive jurisdiction of the case after the confirmation

date with respect to the parties to, and the subject matter of, this Plan and the claims, applications, orders, damages, and other events as described in the Plan.

## III.    Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. § 1129(a) or (b) of the Code. These include the following requirements: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in Section 1129 and they are not the only requirements for confirmation.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

However, many parties in interest are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, Texas Semi believes that all Classes are impaired, except for Class 5, and that holders of claims in the impaired classes are therefore entitled to vote to accept or reject the Plan.

### 1.   What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim

is allowed if either (1) the debtor has scheduled the claim on the debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing proofs of claim is April 9, 2018.

### 2.  *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is impaired under the Plan. As provided in 11 U.S.C. § 1124, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3.  *Who is Not Entitled to Vote?*

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;

- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;

- holders of claims in unimpaired classes;

- holders of claims entitled to priority pursuant to 11 U.S.C. §§ 507(a)(2), (a)(3), and (a)(8);

- holders of claims in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

*Even if you are not entitled to vote on the Plan, you may have a right to object to the*

---

*confirmation of the Plan.*

### 4. Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject the Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by 11 U.S.C. § 1129(b), including the "absolute priority rule." Under the absolute priority rule, the Court may confirm the Plan over the failure of a class to vote for the Plan provided that for a class of unsecured claims, the Plan must provide that each holder of a claim of such class receive or retain on account of

such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. Texas Semi believes that the Plan complies with the absolute priority rule in the Code.

A plan that binds nonaccepting classes is commonly referred to as a "cramdown" plan. The Bankruptcy Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of 11 U.S.C. §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cram down" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

### C.  Effect of Confirmation

As provided for in 11 U.S.C. § 1141, the provisions of the Plan will bind Texas Semi and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. As provided for in 11 U.S.C § 1141(b), confirmation of the Plan vests all of the property of the estate in Texas Semi. After confirmation of the Plan, all of Texas Semi's property dealt with by the Plan (which includes all of Texas Semi's property) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan. So long as Texas Semi makes the payments proposed by this Plan, no creditor may seek to collect any amounts from Texas Semi that were owed prior to the filing of the chapter 11 case or that are provided for in this Plan.

After Texas Semi has made all payments set forth in this Plan, it may request that the

case be re-opened for the purpose of entering an order of discharge. After the Court determines that Texas Semi has made all payments required by the Plan, the Court may enter an order of discharge. An order of discharge from the Court will discharge Texas Semi from any debt that arose before confirmation of this Plan to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that it will not discharge Texas Semi from any debt: (i) imposed by this Plan; (ii) of a kind specified in 11 U.S.C. § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in 11 U.S.C. § 1141(d)(6)(B).

The rights afforded in the Plan will be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against Texas Semi or any of its assets or properties. Except as otherwise provided herein, upon the payment of the amounts provided in this Plan, in accordance with 11 U.S.C. § 1141, all such claims against Texas Semi will be satisfied, discharged, and released in full. Except as otherwise provided herein, all creditors will be precluded from asserting against Texas Semi any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.

## IV.    Additional Sources of Information

### A.  Financial Information Filed with the Court

- Schedules A through H and Summary of Schedules

- Statement of Financial Affairs

- Monthly Operating Reports

*Please be advised that the bulleted financial information above is available in the office of the Clerk of the United States Bankruptcy Court, 515 Rusk, Houston, Texas.*

### B. Attached Exhibits

The following documents are attached as exhibits to this Plan:

- Monthly operating reports for the two months prior to the date of this Plan

- Revenue projections and payments for three years following the Effective Date

- Liquidation analysis under Chapter 7

Dated: May 8, 2018

Texas Semi Truck Sales, LLC

*/s/ Robert Heggy*

By: _____
      Robert Heggy,
      General Manager of
      Texas Semi Truck Sales, LLC

ATTORNEY FOR THE DEBTOR:

*/s/ Reese Baker*
Reese Baker
TX Bar No. 01587700
Baker & Associates
950 Echo Lane, #200
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax

      Counsel for the Debtor has made no independent
investigation of the information contained herein.